**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**ST. PAUL MERCURY INSURANCE
COMPANY,**

    Plaintiff,

v.                                                                       **Civil Action No. 1:14-cv-45
(BAILEY)**

**NATIONAL SURETY CORPORATION,
THF CLARKSBURG DEVELOPMENT
TWO, LLC, MICHAEL H. STAENBERG,
and LOWE'S HOME CENTERS, LLC,**

    Defendants.

## ORDER

Pending before this Court is the motion for summary judgment [Doc. 55], filed by plaintiff, St. Paul Mercury Insurance Company ("St. Paul"), and the motion for partial summary judgment, [Doc. 56], filed by defendants THF Clarksburg Two, LLC ("THF") and Michael H. Staenberg ("Staenberg"), and the motion for summary judgment, [Doc. 53], filed by National Surety Corporation ("NSC"). The parties have filed their responses and relies, thus, this matter is ripe for adjudication. For the following reasons, this Court grants St. Paul's and NSC's motions for summary judgment.

## I. BACKGROUND

**A.    Procedural History**

On March 13, 2014, plaintiff St. Paul filed the instant declaratory judgment action against THF, NSC, Staenberg, and Lowe's Home Centers, LLC, seeking a determination of the existence and scope of coverage afforded under St. Paul's and NSC's policies insuring THF. Pursuant to St. Paul's voluntary dismissal, Lowe's Homes Centers, LLC is

no longer a defendant in the instant case. [Doc. 24]. Defendants THF and Staenberg asserted a counterclaim against St. Paul and a cross-claim against NSC, [Doc. 17], seeking declaratory judgment and alleging breach of contract against both St. Paul and NSC. The insurance coverage issues arise from a lawsuit initiated by Lowe's against THF and Staenberg in the Federal District Court for the Northern District of West Virginia. [Doc. 58-1].

**B.    Factual History**

Many of the relevant facts pertain to the underlying litigation that Judge Irene Keeley, in her Memorandum Opinion and Order, discussed in great detail. *See generally* ***Lowe's Home Ctrs. Inc., v. THF Clarksburg Dev. Two, LLC and Michael H. Staenburg***, No. 1:12-CV-72, 2014 WL 1048521 (N.D. W. Va. Mar. 18, 2014). The following section includes both pertinent facts as determined by Judge Keeley and facts found by this Court.

THF owns a large commercial real estate development, known as Newpointe Plaza Shopping Center, located in Clarksburg, West Virginia. On January 30, 2002, THF and Lowe's entered into two agreements. In the first, a ground lease, THF agreed to lease a portion of the Newpointe land to Lowe's. In the second, the Site Development Agreement (the "SDA"), THF agreed to develop the Lowe's Tract and Lowe's agreed to compensate THF $4,087,154 for the work. [Doc. 53-1, at 1]. Pursuant to the SDA, THF's duties included, among other things, surface and subsurface compaction, clearing and grading, and providing a storm sewer system. *Id.* Significantly, Staenberg, the managing partner and 50% owner of THF, personally guaranteed THF's performance of its duties under the SDA, as well as its payment of any costs and attorneys' fees incurred by Lowe's to enforce the SDA.

2

The SDA required THF to prepare the building pad area, and to certify to Lowe's that the Lowe's Tract had been "completed pursuant to the Site Improvement Plans and that the location of the building corners and elevation of the Building Pad Area subgrade complies with the tolerances specifically set forth in the Site Improvement Plans." [Doc. 53-1, at 9]. THF entered into oral contracts with subcontractors to prepare the site, including CTL Engineering of West Virginia ("CTL"), Wolverton & Associates, and Kanawha Stone Company, Inc. [Doc. 58-19]. Accordingly, on April 9, 2002, THF's geotechnical engineer, CTL, provided Lowe's with a geotechnical certification, stating that the building pad "has been constructed in accordance with the Geotechnical Investigation prepared by CTL Engineering dated 10/23/01, and Lowe's Specifications, dated 07/10/01 . . . The building pad/limits has been acceptably prepared to support the proposed construction. [Doc. 53-2]. THF purported to deliver the developed Lowe's Tract to Lowe's on April 15, 2002. [53-1, at 3]. Lowe's opened its Newpointe store in January 2003.

Later in 2003, after conducting a one year inspection, Lowe's expressed concern about "settlement and separation between pads at receiving." [Doc. 56-1]. Then, on April 20, 2004, Lowe's sent Staenberg an email, stating:

> Michael – we have a settlement issue at this store which seems to be getting worse. Our engineer has stated; "it is probable [that] foundation failure will worsen and wall movement will continue.". . . As you know, this was a pre-developed site and a ground lease. . . . I suspect that there is some responsibility on your part to provide a stabile [sic] subsurface.

[Doc. 58-3]. Staenberg immediately forwarded Lowe's email to two THF employees. Then, later that same day, Staenberg responded to Lowe's, stating, "[r]est assured, THF Realty takes our responsibility very serious . . . and will do everything possible to identify the problem and accept any obligations we may have accordingly." *Id.* Judge Keeley found

3

that this email provided THF adequate notice of Lowe's potential claims, holding, "[a]fter April 20, 2004, THF had all the requisite information it needed to place its subcontractors and insurance carrier on notice of the settlement issues and potential claims against it . . . ." *Lowe's Home Ctrs. Inc. v. THF Clarksburg Dev. Two, LLC,* No. 1:12-CV-72, 2014 WL 1048521, at *5 (N.D. W. Va. Mar. 18, 2014).

After this correspondence, on July 21, 2004, THF sent a letter to the subcontractors that prepared the building pad, CTL and Kanawha Stone Company, stating "[a]s you are aware, Lowe's has experienced serious building failures due to their claim of settlement of the subsurface fill material. . . . I am extremely concerned considering the tremendous amount of money we paid your companies to perform the engineered fill and monitoring and testing of same." [Doc. 53-8].

As discussed in Judge Keeley's opinion, following this exchange of emails, both Lowe's and THF employed engineers to determine the cause of the settlement. [Doc. 56-3]. THF sent the report of its engineering consultant, CTL, to Lowe's on March 22, 2005, in which CTL concluded the settlement was "unrelated to the originally constructed fill and that the area is likely being impacted by some external force." After receiving no response to CTL's report, THF sent Lowe's a letter on November 16, 2005, stating "[s]ince I [THF] have not heard back from you [Lowe's] and our last report eliminated the pad as the cause of the settlement, I will assume that Lowe's is in agreement with our engineer's conclusion." [Doc. 56-4]. For nearly two years, THF received no further communication from Lowe's.

Nevertheless, on August 14, 2007, Lowe's sent THF a letter via UPS explaining that it had delayed its response until its engineers had completed tests designed to determine the cause of the settlement. [Doc. 56-5]. Lowe's further explained that it "considers the

4

underlying soil failures at the site to be a latent defect to which [THF's] extended warranty applies and hereby puts [THF] on notice regarding that claim." *Id.* Thereafter, on January 30, 2008, Lowe's and THF entered into a Tolling Agreement that tolled all statutes of limitations or repose "with respect to the assertion and/or adjudication of any claims and defenses . . . which exist or may arise between Lowe's and THF related to soil settlement at the Lowe's store site in Clarksburg, West Virginia." [Doc. 58-5]. Ultimately, Lowe's filed suit against THF and Staenberg on April, 26, 2012.

THF was insured by St. Paul under a Commercial General Liability policy, with a policy period from February 28, 2002, to February 28, 2003. [Doc. 58-6]. NSC then insured THF from February 28, 2003, to February 28, 2010. [Doc. 53-7].

St. Paul and NSC received notification of the underlying lawsuit on June 12, 2012, and June 11, 2012, respectively. [Doc. 58-10, Doc. 53-6]. NSC denied coverage for THF's claim, on August 9, 2012, stating that NSC was substantially prejudiced by THF's failure to notify it of the claim when THF was initially notified in 2004. [Doc. 53-7]. NSC also reserved the right to assert additional defenses for the "Your Work" and own property exclusions of the insurance policy.

On February 19, 2013, St. Paul agreed to provide a defense and indemnity to THF subject to a reservation of rights. [Doc. 58-11]. Specifically, St. Paul reserved its right to deny coverage based upon late notice as well as the "Control of Property," "Damage to your Products or Completed Work," and "Impaired Property" exclusions. St. Paul's claim notes, dated June 6, 2013, revealed that defense counsel hired by St. Paul made a "complete reversal" in its view of liability. "Whereas defense counsel previously viewed [sic] this case as a NO LIABILITY case that could and would be won in court, he now views the

5

case as one [sic] of CLEAR LIABILITY on the part of the policyholder . . ..." [Doc. 56-9].

St. Paul then filed the instant declaratory judgment action on March 13, 2014. Both THF and Staenburg agreed that St. Paul's filing of the declaratory judgment would not constitute a denial of coverage, and St. Paul would continue to defend THF and Staenburg under a reservation of rights. [Doc. 58-21].

On March 21, 2014, a pre-trial conference was held in the underlying litigation. At that time, St. Paul moved to intervene, but this motion was denied by Judge Keeley because she had a conflict of interest with St. Paul's parent company, The Travelers. [Doc. 58-12]. On this same date, Judge Keeley conducted a settlement conference. The parties and representatives for Lowe's and THF were present as well as representatives for St. Paul. [Doc. 56-10]. NSC did not attend the settlement conference. Ultimately, THF, Staenberg, and Lowe's entered into a settlement, in which THF and Staenberg collectively agreed to pay Lowe's $2,130,000, and remediate the settlement issues at the Lowe's store, which was formalized in writing on May 27, 2014. [Doc. 58-13].

St. Paul and defendants THF and Staenberg disagree on the nature of discussions surrounding the settlement conference. St. Paul's position is that it was neither asked to contribute nor consent to the settlement. [Doc. 58-23]. On the other hand, THF and Staenburg submitted an affidavit from THF's representative, Andrew Boyd, who was present at the settlement conference. Mr. Boyd states that "[j]ust prior to the start of the settlement conference, I was personally informed by defense counsel that had been hired by St. Paul to defend THF that St. Paul had taken a firm position that it was not willing to actively participate in the settlement conference nor was it willing to contribute to any proposed settlement that may be reached between Lowe's and THF." [Doc. 64-1]. Further,

Mr. Boyd states that St. Paul representatives were in the same room and "at no time during the settlement conference did the St. Paul representatives ever object to the tentative settlement or state that St. Paul did not consent to the tentative settlement." *Id.*

St. Paul filed the present case on March, 13, 2014. Notably, on October 22, 2014, THF filed a complaint in the Circuit Court of Monongalia County against CTL asserting claims of fraudulent misrepresentation, negligent misrepresentation, and implied indemnity arising from CTL's preparation of the Lowe's site. [Doc. 58-20].

## II.  STANDARD OF REVIEW

Rule 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## III.  DISCUSSION

### A.  Choice of Law for Insurance Coverage

Initially, this Court must determine whether to apply Missouri or West Virginia law. St. Paul and National Surety both contend that Missouri law should apply. On the other

7

hand, THF argues that this Court should apply West Virginia law. For the reasons discussed below, this Court finds that Missouri law controls issues regarding insurance coverage.

Federal courts must follow the choice of law rules of the state in which it sits. *See* **Klaxon Co. v. Stentor Elec. Mfg. Co.**, 313 U.S. 487, 496 (1941); 19 Charles Alan Wright et al. Federal Practice & Procedure § 4506 (2d. ed.). The Supreme Court of Appeals of West Virginia holds that "the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for the purposes of conflicts analysis." **Liberty Mut. Ins. Co. v. Triangle Industries, Inc.,** 182 W. Va. 580, 585, 390 S.E.2d 562, 567 (1990). Under this reasoning, the Court held:

> in a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

*Id.* at syl. pt. Therefore, here, because both insurance policies at issue were formed in Missouri, Missouri law will govern unless another state has a more significant relationship or Missouri law contravenes West Virginia public policy.

To determine whether West Virginia has a more significant relationship than Missouri, the West Virginia Supreme Court has looked to § 6 of the Restatement (Second) of Conflict of Laws and set forth a list of factors for the court to consider:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

*Id.* 182 W. Va. at 585, 390 S.E.2d at 567. Of these factors, the Court expressed the importance of "certainty, predictability, and uniformity of result," holding "[g]iven the increasingly complex nature of the insurance industry, we believe that the needs of the 'interstate' system of insurance require that law be applied in the most uniform and predictable manner possible." *Id.*

  Defendants THF and Staenburg, on the other hand, rely on ***Joy Technologies, Inc. v. Liberty Mut. Ins. Co.***, 187 W. Va. 742, 746, 421 S.E.2d 493, 497 (1992), to argue that West Virginia has a more significant relationship because the location and instrumentality of the injury was in West Virginia and the parties selected West Virginia as the forum state. *Id.* (holding that although insurance contract was executed in Pennsylvania, West Virginia has a more significant relationship to the litigation and the states' policies differed). Yet, this Court disagrees and holds that the facts in the instant case are easily distinguishable from ***Joy***. The injuries at issue in ***Joy*** are very different than the damages in the present case. In ***Joy***, a manufacturing plant, located in West Virginia, emitted toxic pollution that caused both property damage to adjoining landowners and personal injuries to employees of the plant. Unlike ***Joy***, the damages here are economic in nature, and no unforeseeable third parties suffered harm. Analyzing a similar case, the Fourth Circuit discussed the significance of the damages in ***Joy,*** holding, "[i]t is hard to imagine cases with stronger local ties than environmental cases in which toxic pollution has occurred and local interests in remediation and compensation are paramount." See ***Mulvey Constr. Inc. v. Bituminous***

9

*Cas. Corp.*, 571 Fed. Appx. 150, 156 (4th Cir. 2014) (unpublished). Moreover, the *Joy* Court held that West Virginia's public policy regarding the insurance policy exclusion at issue in the case was best served by applying West Virginia law. Here, the parties do not assert that West Virginia's public policy would be contravened by applying Missouri law.

**B.     Prejudice**

All of the parties move for summary judgment on the issue of prejudice. Under the terms of the policies issued by St. Paul[1] and NSC[2], THF had a duty to promptly notify the insurers of any claims. In the underlying litigation, Judge Keeley found that after THF received Lowe's email on April 20, 2004, "THF had all the requisite information it needed to place its subcontractors and insurance carrier on notice of the settlement issues and potential claims against it . . . ." ***Lowe's Home Ctrs. Inc. v. THF Clarksburg Dev. Two, LLC****,* No. 1:12-CV-72, 2014 WL 1048521, at *5 (N.D. W. Va. Mar. 18, 2014). This Court agrees with Judge Keeley's holding. Although THF received notice of the settlement issues in April 2004, THF waited eight years to provide notice to its insurers.[3]

Under Missouri law, in order to forfeit coverage, the insurer must establish it was prejudiced by the insured's failure to provide timely notice. *See* ***Weaver v. State Farm***

---

[1]     The St. Paul policy reads, in pertinent part, "If an accident or incident happens that may involve liability protection . . . you . . . must: . . . [t]ell us or our agent what happened as soon as possible." [Doc. 58-7, at 23].

[2]     The NSC policy provides: "You must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim." [Doc. 53-11, at 14].

[3]     THF did not provide notice to St. Paul and NSC of the claim until June 12, 2012, [Doc. 58-10] and June 11, 2012, [Doc. 53-6] respectively, which was after Lowe's filed the Complaint in the underlying litigation.

*Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. 1997) (finding no prejudice when couple waited a year to notify their underinsured motorist carrier of accident). "Prejudice is a question of fact. Although a question of fact, the issue of prejudice may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable manner." *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003). To find prejudice as a matter of law, the insurer must prove prejudice with specific facts and cannot rely on speculation. *Weaver,* 936 S.W.2d at 822; compare *Dodson v. State Farm Ins. Co.,* 972 S.W.2d 450, 453 (Mo. Ct. App. 1998) (finding prejudice as a matter of law when insured waited almost ten years to notify the uninsured motorist carrier of the vehicle accident and insurer could not find important records from other insurance companies involved); and *Interstate Cleaning Corp.*, 325 F.3d at 1029 (finding prejudice as a matter of law when insured did not notify insurer until after insured defended lawsuit, rejected settlement, and jury rendered verdict), with *Farm Bureau Town & Country Ins. Co. of Mo. v. Rogers*, 959 S.W.2d 880, 885 (Mo. Ct. App. 1997) (finding no prejudice as a matter of law because even though five-year delay in notice, the insured failed to prove how timely notice would have changed outcome).

St. Paul's and NSC's arguments for prejudice can be consolidated into two broad categories. First, if the insurers were notified promptly, the insurers could have mitigated costs, including attorneys' fees and property remediation, and the insurers could have engaged in settlement discussions. Second, because the insurers were not provided an opportunity to timely investigate the damage and its causation, St. Paul and NSC were barred from asserting claims against potentially negligent subcontractors.

11

In the first claim of prejudice, St. Paul and NSC argue that the late notice deprived it mitigating costs. Specifically, because of the delay, Lowe's incurred over one million dollars in investigation and repair costs before the insurers were notified of the claim. [Doc. 58-1]. Further, if the insurers were promptly notified, they could have engaged in settlement negotiations. St. Paul and NSC both fail to indicate that had the insurers been notified of the claim in 2004, these costs would have been mitigated.

In the second claim of prejudice, the insurers argue that because they were deprived of an opportunity to independently investigate the damage claim and causation, the insurers were precluded from asserting claims against liable subcontractors, including CTL, who was discovered to be negligent in certification of the building pad.[4] Here, adequate evidence in the record suggests that the settlement damage to the Lowe's store was the failure of the building pad to be effectively compacted. Both the underlying complaint and St. Paul's claim notes support the theory that CTL was potentially liable for the settlement damage. All parties state that CTL certified the building pad on outdated information, which resulted in improper compaction of the building pad.[5] The insurers assert that claims against subcontractors were precluded because of the statute of limitations and repose.

---

[4] As previously stated, THF filed a lawsuit against CTL in the Circuit Court of Monongalia County, West Virginia alleging that CTL fraudulently misrepresented and concealed its responsibility in incorrectly certifying the Lowe's building pad. [Doc. 58-20].

[5] St. Paul's insurance notes are consistent, stating:
[b]uilding was not built on [sic] the 'effectively dynamically compacted area,' which would have been the area prepared for the location of the building. . . . It is Gallagher's opinion [CTL's geotechnical engineer] that the settlement problem w/ the building is that the soil was not effectively compacted and, therefore, there was a settlement of the back of the store.
[Doc. 56-9].

Although the parties do not address this issue, this Court finds it necessary to discuss the second conflicts of law issue presented by this case. As discussed above, this Court will apply Missouri law to the insurance coverage issues. However, when determining whether tolling provisions would have prejudiced the insurers, this Court must decide which state's statute of limitations control. Under the conflict of law analysis, this Court is directed to use the procedural law of West Virginia unless another state has a more significant relationship. *Weethee v. Holzer Clinic, Inc.*, 200 W. Va. 417, 421, 490 S.E.2d 19, 23 (1997). Because "[s]tatute of limitations are traditionally considered to be procedural," this Court will look to West Virginia law regarding the tolling of claims. *Id.* (internal quotations omitted).[6]

With this in mind, this Court will turn to the relevant West Virginia law. Under West Virginia law, torts are subject to a two year statute of limitations, *see* W. Va. Code § 55-2-12, and oral contracts are subject to a five-year statute of limitations, W. Va. Code § 55-2-6.[7] By the time the insurers were notified, NSC and St. Paul argue that they were precluded from asserting claims against any of the subcontractors.

On the other hand, THF argues that the discovery rule applies and tolls the statute of limitations. Specifically, the discovery rule involves a five-step analysis:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action

---

[6] West Virginia's borrowing statute, W. Va. Code § 55-2A-2, does not apply because the claim, which was the property damage to Lowe's store, accrued in West Virginia.

[7] THF's contracts with its subcontractors, CTL, Wolverton & Associates, and Kanawha Stone Company, Inc., were oral, thus, a five year statute of limitations applies. *See* Doc. 58-15; W. Va. Code § 55-2-6.

13

occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of **Gaither v. City Hosp., Inc.,** 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine.

Syllabus point 5, **Dunn v. Rockwell**, 225 W.Va. 43, 689 S.E.2d 255 (2009).

The **Dunn** analysis holds that "the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact." **Id.** Here, THF argues that it could not have discovered that CTL/Pat Gallagher was a potentially liable party until after the lawsuit was filed. THF also argues that the discovery rule tolls the applicable statute of limitations because CTL concealed its liability. Therefore, as directed by **Dunn**, these are issues of material fact that will need to be resolved by the trier of fact.

Nevertheless, St. Paul and NSC were barred from asserting any claims against THF's subcontractors under the West Virginia Architect and Builder's Statute of Repose, which states that actions against architects and builders must be brought within ten years. See W. Va. Code § 55-2-6a (2014). The West Virginia Supreme Court of Appeals holds:

West Virginia Code § 55–2–6a (1983) sets an arbitrary time period after which no actions, whether contract or tort, seeking damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property may be initiated against architects and builders. This arbitrary time limit begins to run when the builder or architect relinquishes access and

14

> control over the construction or improvement and the construction or improvement is (1) occupied or (2) accepted by the owner of the real property, whichever occurs first. Pre-existing statutes of limitation for both contract and tort actions continue to operate within this outside limit.

Syllabus Point 6, **Neal v. Marion**, 222 W. Va. 380, 664 S.E.2d 721 (2008). Unlike the statute of limitations, the discovery rule does not apply to toll actions under this statute. **Id.** see also Syllabus Point, **Shirkey v. Mackey,** 184 W. Va. 157, 399 S.E.2d 868 (1990) (holding modified by **Neal**, 222. W. Va. at 385, 664 S.E.2d at 726).

Although West Virginia law does not define "the planning, design, surveying, observation, or supervision of any construction," from examining the relevant case law, this Court finds that the statute of repose applies to THF's subcontractors, who prepared the Lowe's building site. See **Shirkey,** 184 W. Va. at 158, 399 S.E.2d at 869 (holding that the statute of repose applied to a homeowner's claim that the contractor improperly compacted the site, which led to settlement damage to the home).

Here, the record indicates that CTL relinquished access to the site on April 9, 2002, when CTL issued a certification to Lowe's that the pad was complete. [Doc. 53-2]. Thus, the final issue under W. Va. § 55-2-6a is to determine when the "construction or improvement is (1) occupied or (2) accepted by the owner of the real property, whichever occurs first . . .." It is undisputed that THF owned the real property in which the Lowe's store was built. Doc. 53-1; see also **Lowe's Home Ctrs., Inc., v. THF Clarksburg Dev. Two, LLC and Michael H. Staenburg**, No. 1:12-CV-72, 2014 WL 1048521, at *1 (N.D. W.Va. Mar. 18, 2014). According to defendants THF and Staenberg and the SDA, THF

delivered the "Building Pad Area," on April 15, 2002. [Doc. 57; Doc. 53-1].[8]  This delivery date is also consistent with Judge Keeley's opinion, which found "THF urges this Court to confirm April 15, 2002, as the date on which it completed its work under the SDA." *Id.*, at *8.  If THF delivered the building pad to Lowe's, THF must have accepted its subcontractors' work.  Accordingly, the time for W. Va. § 55-2-6a began to run on April 15, 2002, when THF delivered the pad to Lowe's and accepted its subcontractors' work.  Therefore, as of April 15, 2012, THF was barred from bringing a claim against its subcontractors.

Defendants THF and Staenburg argue that St. Paul's claim of prejudice is self-inflicted because St. Paul waited eight months to decide that it would provide a defense to THF.  Therefore, St. Paul could have hired an independent expert to ascertain the cause of the damage.  Further, St. Paul's delay in defending the lawsuit resulted in an missed opportunity to file cross-claims against any subcontractors because the time for joinder in the underlying litigation had not lapsed until October 2012.  However, this argument is unpersuasive because, when Lowe's filed suit on April 26, 2012, the claims against the subcontractors were already barred.  *See e.g.* **Allied Chemical v. Strouse**, 53 F.R.D. 588, 589 (E.D. Pa. 1971) (denying defendant's motion for joinder because claim against third party to be joined was barred by the statute of limitations).

---

[8]  In fact, in the underlying litigation, defendant Staenberg made similar arguments, under a statute of limitations theory, to defeat Lowe's claims.  Staenberg argued that the ten year statute of limitations lapsed because THF completed its work under the SDA on April 15, 2002; thus, Lowe's complaint, which was filed on April 26, 2012, was barred. Based on this argument, because Staenberg argued that THF completed its work under the SDA on April 15, 2002, THF must have accepted the work done by its subcontractors.  Importantly, although Judge Keeley found that Lowe's did not accept the work until the summer of 2003, this finding is not applicable to the instant case because here, the contractual relationship is between THF and its subcontractors.

Under Missouri law, this Court finds that NSC and St. Paul have proven prejudice as a matter of law. In ***Dodson***, after being involved in an car accident, the insured waited nine years and eleven months before notifying its insurance company of its uninsured motorist claim. 972 S.W.2d at 451. The insurance company set forth many arguments for summary judgment on the theory of prejudice due to lack of notice. The Court found prejudice as a matter of law, holding:

> Although Respondent was able to contact most or all of the essential witnesses, including the owner and driver of the allegedly uninsured vehicle, Respondent was unable to locate pertinent records: the insurance company for the uninsured vehicle destroyed its records from the time of the accident and the records of the owner of the vehicle in which Appellant was a passenger were also destroyed, since the company went out of business. These facts alone show very little prejudice to Respondent. However, when combined with the fact that Appellant told the insurance agency's employee that his lawyer would contact the insurance agent and the fact that Appellant waited nine years and eleven months—three weeks short of the statute of limitations of ten years—before giving written notice of the claim, prejudice was established.

*Id.* at 455.

Here, after Lowe's notified THF of the claim, THF waited eight years to notify NSC and St. Paul. During those eight years, THF poorly investigated the cause of the damage. First, THF sent a letter to CTL expressing concern that CTL may be responsible for the settlement damage, but THF then hired CTL to investigate the cause of the damage. Further, after receiving reports from Lowe's experts that opined that THF was responsible the settlement damage, THF entered into a tolling agreement with Lowe's without notifying its insurers. This tolling agreement did not preserve any causes of actions against THF's subcontractors. After Lowe's filed the underlying complaint, St. Paul and NSC were both barred by the statute of repose from asserting any claims against potentially negligent

subcontractors. Because St. Paul and NSC set forth facts that would lead "all reasonable persons [to] conclude that the insured did not provide notice in a reasonable manner," the insurers have proven prejudice as a matter of law. *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1029 (8th Cir. 2003).

## IV.  CONCLUSION

Because this Court finds that NSC and St. Paul were prejudiced as a matter of law, THF is not afforded coverage under these policies. Therefore, the remaining arguments for summary judgment are MOOT. For the foregoing reasons, this Court **GRANTS** National Surety Corporation's Motion for Summary Judgment [Doc. 53], and **GRANTS** St. Paul Mercury's Motion for Summary Judgment [Doc. 55]. Accordingly, THF of Clarksburg's Motion for Partial Summary is hereby **DENIED** [Doc. 56], and judgment shall be entered in favor of St. Paul and NSC. As a final matter, it is **ORDERED** that this case be **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to all counsel on record.

**DATED: January 14, 2015.**

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE